UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SARANJIT SINGH JOHAL,[1]

      Petitioner,

v().

MERRICK B. GARLAND,[2] *United States Attorney General*, *et al.*,

      Respondents.

20-CV-1315-LJV
DECISION & ORDER

---

Saranjit Singh Johal is a citizen of India who has been detained at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, during his removal proceedings. On September 16, 2020, Singh filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the validity of his detention at the BFDF. Docket Item 1.

On December 16, 2020, this Court granted that petition in part and denied it in part. Docket Item 8. More specifically, the Court ordered the government to "release Singh from detention unless a neutral decisionmaker conduct[ed] an individualized hearing to determine whether his continued detention is justified." *Id.* at 17. At that hearing, the burden of proof was to be on the government to demonstrate "by clear and

---

[1] Although the case caption lists the petitioner's name as "Johal Saranjit Singh," his counsel refers to him as "Saranjit Singh Johal ('Mr. Singh')." Docket Item 13-1 at 4. The Court similarly will refer to the petitioner as Saranjit Singh Johal ("Singh"), and the Clerk of the Court shall update the caption to read "Saranjit Singh Johal" on the docket.

[2] The caption has been updated under Federal Rule of Civil Procedure 25(d). The Clerk of the Court shall substitute Merrick B. Garland, United States Attorney General, for William P. Barr, Acting Attorney General, on the docket.

convincing evidence that Singh's continued detention is necessary to serve a compelling regulatory purpose, such as minimizing risk of flight or danger to the community." *Id.*  The Court further ordered that "[t]he decisionmaker also must consider—and must address in any decision—whether there is clear and convincing evidence that there are no less-restrictive alternatives to physical detention, including release on bond in an amount the petitioner can reasonably afford, with or without conditions, that also would reasonably address those same regulatory purposes." *Id.* at 16.

Singh had a bond hearing before an immigration judge ("IJ") on December 23, 2020.  *See* Docket Item 13-3 at 1.  At that hearing, the IJ found that the government had "met its burden by clear and convincing evidence" of demonstrating that Singh "is a danger to the community."  *Id.* at 23-24.  The IJ then noted that because she "f[ound] that [Singh] is a danger to the community," she "d[id] not have to address whether or not [he] is a flight risk."  *Id.* at 24.  Nevertheless, the IJ determined that Singh also posed a flight risk.  *Id.*  The IJ then concluded that there were no less-restrictive alternatives to physical detention that would adequately address the government's regulatory interest in detaining Singh.  *Id.*  The IJ also issued a written decision reiterating those findings.  Docket Item 9-1.

On March 10, 2021, Singh, now represented by counsel, moved to enforce this Court's order of December 16, 2020.  Docket Item 13.  He claims that the bond hearing that the government provided did not comport with the Court's direction.  *Id.*; Docket Item 13-1.  On March 24, 2021, the government responded to Singh's motion, Docket Item 14, and on April 14, 2021, Singh replied, Docket Item 18.

For the reasons that follow, the Court grants in part and denies in part Singh's motion to enforce.  More specifically, the Court determines that the IJ did not appear to run afoul of this Court's order in evaluating the danger that Singh posed to the community.  But the IJ did not, as this Court ordered, determine that clear and convincing evidence established that "no less-restrictive alternatives to physical detention" could address any compelling regulatory interest in detaining him.  Docket Item 8 at 16.  Accordingly, this Court orders that the government shall release Singh unless, **within fourteen days of the date of this order,** he receives a bond hearing at which the government demonstrates that clear and convincing evidence establishes that "less-restrictive alternatives to physical detention" would not "reasonably address" the compelling regulatory interest in detaining him, Docket Item 8 at 16, or the IJ clarifies her decision by finding that "there is clear and convincing evidence that there are no less-restrictive alternatives to physical detention . . . that also would reasonably address those same regulatory purposes," *id.*  In any decision, the IJ also may, but need not, address whether clear and convincing evidence establishes that Singh poses a risk of flight.[3]

---

[3] The Court assumes familiarity with the factual background in this case, which is described in its decision and order on Singh's petition.  *See* Docket Item 8 at 2-3.  Accordingly, the Court will refer only to the facts necessary to explain its decision on this motion.

**DISCUSSION**

**I.      EXHAUSTION**

Before addressing the merits of Singh's argument that his bond hearing did not comport with this Court's order, the Court must address a threshold jurisdictional issue. The government argues that this Court cannot consider Singh's motion because he has not exhausted his administrative remedies. More specifically, the government argues that Singh must first obtain a decision from the Board of Immigration Appeals ("BIA") on an appeal of the IJ's bond decision he can seek relief in this Court. *See* Docket Item 14 at 3-5.

This Court disagrees. Administrative exhaustion is not required when this Court is deciding only whether the petitioner received the relief that the Court already ordered. *See Blandon v. Barr*, 434 F. Supp. 3d 30, 37 (W.D.N.Y. 2020). Moreover, Singh argues in his motion that he did not receive a constitutionally adequate bond hearing—an issue that "the BIA does not have jurisdiction to adjudicate." *Id.* (quoting *United States v. Gonzalez-Roque*, 301 F.3d 39, 48 (2d Cir. 2002)). And the government concedes that under the doctrine they assert, exhaustion is "required [only] as a prudential matter." Docket Item 14 at 4. Under the circumstances, it would make little sense for this Court to delay deciding Singh's motion until the BIA decides any appeal.

**II.     JURISDICTION**

The government also argues that Singh "asks this Court to substitute its own judg[]ment for that of the immigration judge," which the government contends is a discretionary decision "protected from review . . . under 28 U.S.C. § 1226(e)." *Id.* at 5. This Court agrees that it does not have jurisdiction to review discretionary decisions of

4

an IJ.  But as this Court has previously explained, "a federal court always retains jurisdiction to enforce its lawful judgments, including habeas judgments, [and] the court has the authority to see that its judgment is fully effectuated."  *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 325 (W.D.N.Y. 2019) (alteration in original) (quoting *Gall v. Scroggy*, 603 F.3d 346, 352 (6th Cir. 2010)).  In other words, this Court has jurisdiction to decide the limited question of whether Singh's bond hearing complied with its prior order.

### III. SINGH'S BOND HEARING

Singh argues that the IJ failed to comply with two different aspects of this Court's prior order.  First, Singh contends that the IJ "impermissibly shifted the burden of proof to Mr. Singh, requiring him to disprove dangerousness, flight risk, and inability to pay bond."[4]  Docket Item 13-1 at 9 (capitalization removed).  Second, Singh argues that "the IJ did not meaningfully consider alternatives to detention at Mr. Singh's December 23 bond hearing."  *Id.* at 19.

---

[4] Singh also argues that the IJ "erroneously applied *Matter of J.M. Acosta*, [27 I. & N. Dec. 420 (BIA 2018)], [in] finding that Mr. Singh's conviction is final, even though it is pending on direct appeal."  Docket Item 13-1 at 11.  At the hearing, the IJ determined that because Singh had not submitted the "brief for [his] criminal appeal," his conviction was final for immigration purposes under *Matter of J.M. Acosta*.  *Id.* at 24.  After briefing was completed on this motion to enforce, the Second Circuit decided that the *Matter of J.M. Acosta* scheme—requiring noncitizens to "submit their appellate brief . . . to show that their challenge is merits-based and . . . rebut the presumption that their conviction[] [is] final"— was "arbitrary and unreasonable."  *Brathwaite v. Garland*, 3 F.4th 542, 555 (2d Cir. 2021).  So Singh may be correct that his conviction is not yet "final."  Regardless, Singh's argument that the IJ's determination on the finality of his conviction affected her determination that he posed a flight risk, *see* Docket Item 13-1 at 11-14, is moot because this Court finds that the IJ's conclusion that Singh posed a flight risk did not comply with this Court's order for the reasons set forth below.

5

### A. Dangerousness and Risk of Flight

To begin, "it is important to emphasize that the Court's task is narrow: it is to determine whether [the government] complied with the Decision and Order, not to review the hearing evidence *de novo* and determine whether [Singh] is in fact a flight risk" or a danger to the community. *Apollinaire v. Barr*, 2019 WL 4023560, at *3 (W.D.N.Y. Aug. 27, 2019). The question, therefore, is whether the immigration judge "'relied upon proof that could not possibly establish by clear and convincing evidence—as a matter of law—that [Singh] is a danger to the community' or a flight risk." *Concepcion v. Barr*, 2021 WL 1807870, at *4 (W.D.N.Y. May 6, 2021) (quoting *Nguti v. Sessions*, 2017 WL 5891328, at *2 (W.D.N.Y. Nov. 29, 2017)).

#### 1. Risk of Flight

Singh argues that the IJ's determination that he posed a risk of flight is not supported by clear and convincing evidence. Docket Item 13-1 at 12-16. Singh also contends that in finding that his proposed bond—$15,000—could not mitigate that flight risk, the IJ effectively "placed the burden on Mr. Singh to demonstrate his ability to pay bond." *Id.* at 15 (emphasis removed). The government effectively concedes that the IJ did not comply with this Court's order requiring that the government demonstrate by clear and convincing evidence that Singh posed a flight risk. *See* Docket Item 14 at 9 n.5 (noting that "[a]dmittedly . . . the immigration judge did not explicitly state that she found that the [g]overnment had met its burden by a clear and convincing standard that [Singh] posed a risk of flight," but arguing that "[t]his is largely immaterial" because the IJ concluded that Singh "posed a danger to the community"). Because the IJ did not

6

determine that clear and convincing evidence established Singh's risk of flight, his continued detention cannot be justified by the IJ's finding on this ground.

### 2. Danger to the Community

At the bond hearing, the IJ offered three reasons why Singh posed a danger to the community. First, the IJ addressed Singh's "recen[t]" and "sever[e]" conviction for "an extremely serious crime"—conspiracy to sell heroin.[5] Docket Item 13-3 at 23; Docket Item 9-1 at 2. The IJ also looked at Singh's "history of drug abuse," which began "back when he was 17 or approximately that age" and "was using marijuana." Docket Item 13-3 at 23. And the IJ determined that despite this "history of drug abuse" and his prior conviction Singh had not "done anything to address his addiction other than being incarcerated." *Id.* at 23-24.

At the hearing, the IJ questioned Singh about his efforts to remain drug-free prior to his incarceration. *Id.* at 9-11. Singh testified that he sought inpatient treatment for his drug use in 2016 before clarifying that this treatment was "just . . . a detox"; he also said that he resumed using heroin and marijuana and did not seek any further treatment

---

[5] Singh contends that the IJ erred in admitting his pre-sentence investigation report over his objections that it was obtained in violation of New York state law and that it contained "inherently unreliable" evidence. Docket Item 13-1 at 11. But "even if it were proper for the Court to consider the propriety of admitting certain pieces of evidence during a bond hearing," *see Blandon*, 434 F. Supp. 3d at 39 n.3, is it not clear that the IJ relied on the factual narrative in the report in determining that Singh posed a danger to the community. The IJ questioned Singh about his prior drug use and his conviction—that is, facts contained in the report—and did not later mention the report in her oral or written decision. *See* Docket Item 13-3; Docket Item 9-1. And Singh does not specifically argue that the IJ incorrectly relied on any particular facts contained in the report. *Cf.* Docket Item 13-1 at 11 ("*To the extent that* the IJ relied on any evidence [from the report] in her decision, the admission of and reliance upon the [report] was improper." (emphasis added)).

afterward.  *Id.* at 9-10.  Singh testified that he continued to use heroin and marijuana until "some day before" he was taken into custody for his state conviction in early 2018.  *Id.* at 9.  He noted that he spoke to a counselor about his drug use while incarcerated in state prison in 2018 but that he had not spoken to a doctor or psychiatrist while in immigration detention.[6]  *Id.* at 11.  He concluded by testifying that he was willing to take "any kind of drug program" if he were released.  *Id.* at 21.

Based on Singh's prior conviction, his history of drug use, and his apparent lack of rehabilitation prior to incarceration, the IJ determined that the government had established, by clear and convincing evidence, that Singh posed a danger to the community.  *Id.* at 23-24.  The IJ offered a clear rationale for that:  In her written decision, she stated that Singh "has a long history of drug use that ramped up until his recent conviction in 2018 for conspiracy to sell heroin."  Docket Item 9-1 at 2.  And in her oral decision, the IJ found that Singh's conviction was "recen[t]" and "sever[e]," and concluded that drug trafficking was not a "victimless crime."  Docket Item 13-3 at 23.  Moreover, the IJ noted that Singh's conviction and history of drug abuse involved heroin, which the IJ correctly observed was a "particularly insidious drug."  *Id.*

The IJ also explicitly noted that she "d[id] not rely solely on [Singh's] conviction" in evaluating whether he was a danger to the community.  *Id.*  Instead, the IJ considered Singh's failure to "address his addiction" in any way "other than being incarcerated."  *Id.*  And in concluding that "[t]here is no evidence of rehabilitation other than [Singh's] hopeful words," Docket Item 9-1 at 2, the IJ did not "shift[] the burden to Mr. Singh" to

---

[6] Singh testified that he had not attended any meetings or counseling while at BFDF, but he also noted that "[t]here[] [is] no counseling [there] at all."  Docket Item 13-3 at 11.

8

disprove dangerousness, Docket Item 13-1 at 8.  Indeed, the IJ explicitly noted that "it was [not Singh's] burden" to present evidence; that the United States Department of Homeland Security ("DHS") "ha[d] met its burden by clear and convincing evidence" to establish that Singh posed a danger to the community; and that "the record [was] lacking in any evidence" to indicate otherwise.  Docket Item 13-3 at 24.[7]

Based on all that, it is clear that the IJ did not "rel[y] upon proof that *could not possibly* establish by clear and convincing evidence . . . that [Singh] is a danger to the community"—even if the opposite conclusion could be drawn on Singh's dangerousness.  *Concepcion*, 2021 WL 1807870, at *4 (emphasis added) (quoting *Nguti*, 2017 WL 5891328, at *2).  Therefore, the IJ followed this Court's direction on that issue.

### B.     Alternatives to Detention

But contrary to this Court's direction, the IJ did not "address . . . whether there is *clear and convincing evidence* that there are no less-restrictive alternatives to physical detention" that would "reasonably address" the government's interest in detaining Singh.  Docket Item 8 at 16 (emphasis added).

At the outset, the Court notes that it is unclear whether the IJ believed that she even had to consider alternatives to detention at all after finding that Singh posed a danger to the community.  In her oral decision, the IJ noted that because she had

---

[7] Singh also argues that the "IJ was [] apparently not satisfied with the nature and/or frequency of Mr. Singh's past attempts, current success, and future desire to stay clean and seek further treatment."  Docket Item 13-1 at 7.  But this Court cannot substitute its own view of the evidence for that of the IJ.  *See Adejola v. Barr*, 2020 WL 994577, at *6 (W.D.N.Y. Feb. 14, 2020).  And the IJ determined that Singh's testimony on this score was belied by his "lifelong history of drug use."  Docket Item 13-3 at 24.

already "found that [Singh] is a danger to the community," she considered alternatives to detention only out of an "abundance of caution." Docket Item 13-3 at 24. That suggests that the IJ viewed her finding of dangerousness as foreclosing any and all alternatives to detention. On the other hand, the IJ also reasoned that alternatives to detention like "an ankle monitor would not help because [Singh] could still easily get drugs." *Id.* So the IJ may have determined that any alternatives to detention could not adequately address the danger the danger to the community that Singh posed.

Either way, however, the IJ did not determine that *clear and convincing evidence* established that alternatives to detention could not address the danger Singh posed to the community. In her oral decision, the IJ noted only that she "[was] looking at alternative methods as well" and "needs to consider alternative methods to comply with the regulatory interests." *Id.* And in her written order, the IJ simply stated that "[a]lternatives to detention would not address [Singh's] addictions that led him into this situation,"[8] Docket Item 9-1 at 2, without mentioning the standard by which she made that decision.

What is more, the IJ appeared to disregard some alternatives to detention solely because she "ha[d] no teeth to order [them]." Docket Item 13-3 at 24. Before dismissing these alternatives, the IJ did not ask DHS whether it could enforce alternative conditions of release and, if so, address whether those enforceable conditions might mitigate the danger that Singh posed to the community. The IJ's

---

[8] The government does not appear to contend that the IJ found, by clear and convincing evidence, that alternatives to detention could not adequately address the government's compelling regulatory interests. *Cf.* Docket Item 14 at 10 ("The immigration judge *considered* other alternatives to detention as well, but *noted* that they would not prevent the harms at issue." (emphasis added)).

failure to consider these alternatives stands in stark contrast to the many immigrants across the country whom DHS regularly monitors on conditions of release. *See, e.g.*, *Hechavarria*, 358 F. Supp. 3d at 244 n.13 (collecting cases) (allowing DHS to set appropriate conditions of release because the agency would be the one to monitor the petitioner).

The IJ therefore did not find by "*clear and convincing* evidence that there are no less-restrictive alternatives to physical detention" that would address the regulatory interests in detaining Singh. Docket Item 8 at 16 (emphasis added). So the IJ did not make the necessary findings to justify Singh's continued detention that this Court deemed necessary under the Due Process Clause. *Id.*

Because the IJ failed to comply with this Court's prior order, the question then becomes the appropriate remedy. Singh argues that he should be released on conditions. Docket Item 13-1 at 19. The government contends that this Court "should remand the case to the immigration judge for clarification or rehearing, rather than order [Singh's] immediate release." Docket Item 14 at 3. Under the circumstances here, the Court finds that the latter remedy is appropriate.

As set forth above, the IJ considered whether Singh posed a danger to the community and a risk of flight. And the IJ addressed whether alternatives to detention could mitigate any danger to the community or risk of flight, even if she foreclosed certain alternatives because she could not enforce them. Thus, this is not a case where the IJ blatantly disregarded this Court's order.[9] *Cf. Enoh v. Sessions*, 2017 WL

---

[9] Because the Court determines that the IJ did not blatantly disregard its prior order, it does not pass on Singh's request that the Court "admonish the IJ [to] ensure future compliance." Docket Item 18 at 12-13.

11

2080278, at *8, *11 (W.D.N.Y. May 15, 2017) (releasing the petitioner where the IJ "chose to rely on general factual background in this Court's order" and did not "make any factual findings about exactly what happened" at the court-ordered bond hearing). Instead, the IJ simply did not explicitly articulate and address the standard of proof necessary to assess whether Singh posed a risk of flight and whether alternatives to detention might adequately address the government's regulatory interests in detaining Singh.

Accordingly, this Court remands this case to the IJ. In any decision, the IJ should clarify the evidence and standard of proof supporting her determination that possible alternatives to detention would not adequately serve the government's interests.

## ORDER

For the reasons explained above, Singh's motion to enforce, Docket Item 13, is GRANTED in part and DENIED in part. The government shall release Singh unless, **within fourteen days of the date of this order,** he receives a bond hearing at which the government demonstrates that clear and convincing evidence establishes that "less-restrictive alternatives to physical detention" would not "reasonably address" the compelling regulatory interest in detaining him, Docket Item 8 at 16, or the IJ clarifies her decision by finding that "there is clear and convincing evidence that there are no less-restrictive alternatives to physical detention . . . that also would reasonably address those same regulatory purposes," *id.* In any decision, the IJ also may, but need not, address whether clear and convincing evidence establishes that Singh poses a risk of flight. The government shall file a declaration indicating that it has complied with this order **within twenty-one days of the date of this order.**

SO ORDERED.

Dated:  November 30, 2021
        Buffalo, New York


                                          */s/ Lawrence J. Vilardo*
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE